Supreme Court

**In the Matter of Robert T. Karns.**

No. 2013-49-M.P.

**O R D E R**

This attorney disciplinary matter comes before us pursuant to Article III, Rule 6 of the Supreme Court Rules of Disciplinary Procedure. On October 16, 2012, the Disciplinary Board of the Supreme Court (board) forwarded to us a unanimous decision of the participating members finding that the respondent, Robert T. Karns, had violated the Supreme Court Rules of Professional Conduct. However the board was divided as to the recommended sanction, with six members recommending that the respondent be ordered to provide both 150 hours of community service and 150 hours of pro bono legal service, and four members recommending that we impose a public censure.[1] We directed the respondent to appear before this Court at its conference on November 14, 2012, to show cause, if any, why he should not be disciplined. Having heard the representations of the respondent, his attorney, and this Court's disciplinary counsel, we determine that cause has not been shown.

The following are the facts determined by the board at a hearing held on May 21, 2012. On January 31, 2012, William Moran, a resident of Rhode Island, died as a result of exposure to carbon monoxide gas that occurred while he was staying at a hotel in the State of West Virginia. William Moran was survived by his wife, Louise Moran. On February 2, 2012, an attorney from a law firm in West Virginia contacted the respondent, advised him about the death of Mr. Moran,

---

[1] The disciplinary board consists of twelve members appointed by this Court. Two members did not participate in these proceedings.

1

and asked the respondent to "look into it." The respondent has known the West Virginia attorney for a number of years and has worked with him on prior cases.

The respondent directed an investigator to go to the home of Mrs. Moran for the purpose of personally soliciting her so that she may hire his firm to work in conjunction with the West Virginia lawyer on any claim that may have arisen due to her husband's death. The investigator arrived at the home of Mrs. Moran on February 2, 2012, bearing the respondent's business card and a printout of the website for the West Virginia law firm. Mrs. Moran was not at home at that moment, as she was out making funeral arrangements for her deceased husband. However, a family friend was at the house. The investigator left the card and the printout with that family friend, with a request that he provide that information to Mrs. Moran. Mrs. Moran did not contact the respondent.

One week later the same investigator again appeared at Mrs. Moran's residence. This time she was home. The investigator introduced himself as the respondent's representative and advised her he was following up on the previous week's visit. Mrs. Moran advised the investigator that she had another attorney and requested that he leave. He did so, and there was no further contact from the respondent with Mrs. Moran.

On February 21, 2012, the Office of Disciplinary Counsel received a complaint from Mrs. Moran regarding the respondent's contact with her. The respondent immediately responded to that complaint, acknowledged that the allegations set forth by Mrs. Moran were true, and admitted that his conduct was in violation of the Supreme Court Rules of Professional Conduct. He further openly admitted his conduct at the hearing held before the board. At the disciplinary hearing the respondent presented the following mitigating testimony which the board found persuasive as to the issue of sanction. The respondent has practiced law for thirty eight years in

2

Massachusetts and twenty four years in Rhode Island. He has no history of discipline in either state. He presented prominent members of the Rhode Island Bar as character witnesses, all of whom have known him for many years, and all of who testified as to his good character and reputation for candor, integrity and fairness. He expressed remorse which the board found to be genuine, and offered his apology which the board concluded was sincere.

The board concluded that the admitted conduct of the respondent is a violation of Article V, Rule 7.3(a) of the Supreme Court Rules of Professional Conduct. Rule 7.3(a), entitled "Direct contact with prospective clients" provides:

> "(a) A lawyer shall not by in-person, live telephone or real time electronic contact solicit professional employment from a prospective client when a significant motive for the lawyer's doing so is the lawyer's pecuniary gain, unless the person contacted:
>
> "(1) is a lawyer;
>
> "(2) has a family, close personal, or prior professional relationship with the lawyer; or
>
> "(3) is a business organization, a not-for-profit organiza-tion, or governmental body and the lawyer seeks to provide services related to the organization."

We agree with the board's conclusion. The respondent directed his investigator to directly contact Mrs. Moran within days of her husband's death to solicit employment on behalf of himself and another lawyer. The board drew the reasonable inference that his purpose in doing so was pecuniary gain, and we agree that such an inference is warranted by the facts of the case. None of the exceptions to the prohibition against in-person solicitation set forth in Rule 7.3(a) are applicable here.

The rationale for the prohibition against in-person solicitation is set forth in the commentary which accompanies the rule, and we cite it here with full approval.

3

Comment [1] to Rule 7.3 provides as follows:

> "There is a potential for abuse inherent in direct in-person, live telephone or real-time electronic contact by a lawyer with a prospective client known to need legal services. These forms of contact between a lawyer and a prospective client subject the layperson to the private importuning of the trained advocate in a direct interpersonal encounter. The prospective client, who may already feel overwhelmed by the circumstances giving rise to the need for legal services, may find it difficult fully to evaluate all available alternatives with reasoned judgment and appropriate self-interest in the face of the lawyer's presence and insistence on being retained immediately. The situation is fraught with the possibility of undue influence, intimidation, and over-reaching."

It is immaterial that the respondent used an intermediary to solicit in-person employment by Mrs. Moran. The investigator was acting pursuant to the respondent's instructions. Rule 7.3(a) clearly prohibits the respondent from engaging in such solicitation, and Article V, Rule 8.4 of the Supreme Court Rules of Professional Conduct entitled "Misconduct," provides, in relevant part, that "[i]t is professional misconduct for a lawyer to: (a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another * * *." (Emphasis added.)

We have previously addressed an attorney's indirect solicitation of clients and have concluded that such indirect solicitation violates Rules 7.3(a) and 8.4(a). See In re Lembo, 37 A.3d 109, 111 (R.I. 2011) (mem.). We see no reason to vary from this conclusion.

Our rules allow various, less intrusive means for attorneys to provide information to the public regarding the legal services they provide. Lawyers may advertise their services through the public media, so long as the advertisements are not false or misleading. See Article V, Rules 7.1 and 7.2 of the Supreme Court Rules of Professional Conduct. Lawyers may also direct written communications to a potential client who may be in need of their services subject to various conditions which are contained in the rule. See Rule 7.3. Such communications present

4

less potential for abuse or overreaching than in-person solicitation. The respondent's conduct in this matter exceeded the permissible bounds of client recruitment, and cannot be condoned. Indeed, such an unseemly form of client solicitation brings the legal profession into disrepute. Accordingly, this conduct warrants the imposition of public discipline.

The purposes of professional discipline are two-fold: "to protect the public and to maintain the integrity of the profession." In re McBurney, 13 A.3d 654, 655 (R.I. 2011) (mem.) (quoting In re Almonte, 678 A.2d 457, 458 (R.I. 1996)). In fashioning an appropriate sanction this Court weighs both mitigating and aggravating factors. In re Fishbein, 701 A.2d 1018, 1020 (R.I. 1997). The board presented us with two recommendations: either the performance of 150 hours of community service and 150 hours of pro bono legal service or the imposition of a public censure. Article III, Rule 3 of the Supreme Court Rules of Disciplinary Procedure provides a range of sanctions for misconduct that include, in descending order of severity, disbarment, suspension, public censure; or orders for restitution, community service, pro bono legal service, or substance-abuse treatment or other counseling. The imposition of a public censure, as recommended by a minority of the board, ranks higher on this scale of discipline than the majority's recommendation of community and pro bono service. When the respondent appeared before us he acknowledged that his misconduct warranted the imposition of a public censure.

We find the respondent's misconduct in this matter to be inexcusable. However, we note that he has an unblemished record that spans thirty-eight years of legal practice. There is no indication that he has done anything similar before, and we are confident he will never do this again. He readily acknowledged the wrongfulness of his actions and is genuinely remorseful for the lack of judgment he exhibited here.

We have carefully considered the board's recommendation in this matter. We conclude that the recommendation of the minority of the board that we impose a public censure best serves the purposes of professional discipline in this case.

Accordingly, the respondent, Robert T. Karns, is hereby publicly censured.

Entered as an Order of this Court this 8th day of March, 2013.

By Order,


_____/s/_____

Clerk

6


**TITLE OF CASE:**          In the Matter of Robert T. Karns.

**CASE NO:**          No. 2013-49-M.P.

**COURT:**          Supreme Court

**DATE ORDER FILED:**          March 8, 2013

**JUSTICES:**          Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**          N/A – Court Order

**JUDGE FROM LOWER COURT**:

          N/A – Court Order

**ATTORNEYS ON APPEAL:**

          For Petitioner:     David Curtin, Esq.
                              Chief Disciplinary Counsel

          For Respondent:   Amato A. DeLuca, Esq.